IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| TAMERA McCALL, *for WM*, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION NO. 2:08cv853 -WC |
| v. ) | |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

**I.    INTRODUCTION**

Tamera McCall ("Plaintiff") applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.* (2000), on behalf of her brother and legal dependent, W.M. ("Claimant"), alleging he was disabled. Plaintiff's application was denied at the initial administrative level. Plaintiff then requested and received a hearing before an Administrative Law Judge (ALJ). Following the hearing, the ALJ also denied the claim. The Appeals Council rejected a subsequent request for review. The ALJ's decision consequently became the final decision of the Commissioner of Social Security (the Commissioner).[1] *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The case is now before the Court for review pursuant to 42 U.S.C. § 405(g). Pursuant to 28

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub. L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

U.S.C. § 636(c), both parties have consented to the conduct of all proceedings and entry of a final judgment by the undersigned United States Magistrate Judge. Pl.'s Consent to Jurisdiction (Doc. #9); Def.'s Consent to Jurisdiction (Doc. #8). Based on the Court's review of the record and the briefs of the parties, the Court AFFIRMS the Commissioner's decision.

## II.  STANDARD FOR CHILDHOOD DISABILITY

Under 42 U.S.C. § 1382c(a)(3)(C)(i), a person under the age of 18 is disabled (and hence entitled to disability benefits) if the person "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."[2]  In determining whether a child is disabled, the Commissioner employs the following three-step sequential evaluation process. *See* 20 C.F.R. § 416.924 (2007).

> (1) Is the person presently not engaged in substantial gainful activity?
>
> (2) Is the person's impairment severe?
>
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the "Listing of Impairments"), and also meet the twelve-month duration requirement?[3]

---

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

[3] Part A of the Listing of Impairments applies to children and adults; Part B applies to children only. In dealing with a child's case, the Commissioner looks first to Part B, then to Part A. 20 C.F.R. § 416.925(b); *Wilkinson v. Bowen*, 847 F.2d 660, 661 (11th Cir. 1987).

If the answer to each of the three questions is "yes," then the child is entitled to benefits.

In order for a severe impairment to meet or equal one of the listed impairments, the impairment must "cause[] marked and severe functional limitations" for the child claimant. 20 C.F.R. § 416.911(b).

> A child's impairment is recognized as causing "marked and severe functional limitations" if those limitations meet[], medically equal[], or functionally equal[] the [L]istings. A child's limitations "meet" the limitations in the Listings if the child actually suffers from the limitations specified in the Listings for that child's severe impairment. A child's limitations "medically equal" the limitations in the Listings if the child's limitations are at least of equal medical significance to those of a listed impairment.

*Shinn ex rel. Shinn v. Comm'r of Soc. Sec.*, 391 F.3d 1276, 1278 (11th Cir. 2004) (internal quotations and citations omitted). Even if the child's impairment does not meet or medically equal a listing, it may still functionally equal a listing. In assessing functional equivalence, the ALJ considers the "degree to which the child's limitations interfere with the child's normal life activities. The C.F.R. specifies six major domains of life:

> (I) Acquiring and using information;
> (ii) Attending and completing tasks;
> (iii) Interacting and relating with others;
> (iv) Moving about and manipulating objects;
> (v) Caring for [one]self; and
> (vi) Health and physical well-being."

*Id.* at 1279. "The C.F.R. contains various 'benchmarks' that children should have achieved by certain ages in each of these life domains." *Id.* (citing 20 C.F.R. §§ 416.926a(g)-(l)). "A

3

child's impairment is 'of listing-level severity,' and so 'functionally equals the listings,' if[,] as a result of the limitations stemming from that impairment[,] the child has 'marked' limitations in two of the domains, or an 'extreme' limitation in one domain." *Id.* (citing 20 C.F.R. § 416.926a(d) and § 416.925(a)).  A marked limitation is one that interferes seriously with the child's "ability to independently initiate, sustain, or complete activities."  20 C.F.R. § 416.926a(e)(2)(I).  An "extreme limitation" is one that "interferes very seriously with [the child's] ability to independently initiate, sustain, or complete activities."  20 C.F.R. § 416.926a(e)(3)(I).

## III.  SCOPE OF REVIEW

The Court's review of the Commissioner's decision is a limited one.  This Court must find the Commissioner's decision conclusive if it is supported by substantial evidence.  42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997).  "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  *See also Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) ("Even if the evidence preponderates against the Commissioner's findings, [a reviewing court] must affirm if the decision reached is supported by substantial evidence.").  A reviewing court may not look only to those parts of the record which support the decision of the ALJ, but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ.

*Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings. . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

## IV. ADMINISTRATIVE PROCEEDINGS

The claimant was twelve years old at the time of Plaintiff's application for supplemental security income. Tr. 49. Following the administrative hearing, the ALJ found the claimant had not engaged in substantial gainful activity at any time during the period under adjudication (Step 1). Tr. 18. The ALJ also found the claimant had two severe impairments under Step 2: attention deficit hyperactivity disorder and borderline intellectual functioning. Tr. at 19. Nonetheless, the ALJ concluded that these impairments do not meet or equal in severity the criteria for any impairment in the Listing of Impairments, and that the claimant did not have an "extreme" limitation in any areas of functioning or "marked" limitation in two areas of functioning.[4] Tr. 19-26. Consequently, the ALJ found the claimant was not disabled. Tr. 26.

## V. PLAINTIFF'S CLAIM

Plaintiff presents one issue for review: whether the ALJ's decision should be reversed

---

[4] Indeed, the ALJ found that the claimant suffers either "less than marked" or no limitations in all of the domains of functioning. Tr. 22-26.

because "the ALJ failed to state with particularity the weight he gave the medical opinions expressed by Dr. DeMuth and the reasons therefor." Pl.'s Brief (Doc. #13) at 3.

## VI. ANALYSIS

Plaintiff contends that, in denying benefits, the ALJ improperly failed to articulate the weight he attributed to the opinion rendered by Dr. DeMuth in a consultative examination. Pl.'s Brief (Doc. #13) at 4-7. Plaintiff asserts that "the ALJ's decision **completely ignores** Dr. DeMuth's evaluation and examination findings." *Id.* at 5 (emphasis in original). Plaintiff contends that the ALJ's failure to properly describe the weight afforded Dr. DeMuth's opinion, as well as the reasoning supporting that decision, violates applicable law and requires reversal.[5] While conceding that the ALJ does not expressly discuss Dr. DeMuth's ultimate opinion, Defendant contends that the ALJ implicitly rejected Dr. DeMuth's opinion and that such rejection is supported by substantial evidence. Def.'s Brief (Doc. #14) at 9. Defendant also asserts that any error in failing to specifically address Dr. DeMuth's opinion was harmless, as it is clear from the ALJ's opinion that the ALJ would not have reached a different decision. *Id.* at 10.

Dr. DeMuth conducted a consultative disability examination of the claimant on March 18, 2005. Tr. 182. Based on his evaluation of the claimant, Dr. DeMuth opined that the claimant "appears to be severely impaired in his ability to function in an age appropriate

---

[5] Notably, Plaintiff does not contend that the ALJ's ultimate decision denying Plaintiff's disability claim is not supported by substantial evidence.

6

manner cognitively, communicatively, socially, adaptively, behaviorally, and in concentration, persistence, and pace." Tr. 184-85.[6] In his opinion, the ALJ did cite to Dr. DeMuth's report in recounting prior diagnoses of the claimant's severe impairments, Tr. 19, but indeed did not further elaborate upon Dr. DeMuth's opinion that the claimant is "severely impaired" in the areas described by Dr. DeMuth.  However, the ALJ did give "significant weight" to the "State agency medical opinions," specifically the opinion of the physician examiner, Dr. Rankart, *see* Tr. 21, who, in reviewing all of the medical evidence, found Dr. Demuth's opinion "not adequately supported by collective evidence." Tr. 193.

When deciding a claim of disability, the ALJ is "required to state with particularity the weight he gave the different medical opinions and the reasons therefor." *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987).[7] "In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Cowart v. Schweiker*, 662

---

[6] Dr. DeMuth reached this conclusion after relating a number of observations about the claimant's demeanor, affect, and behavior, as well as the results of the "sensorium" Dr. DeMuth administered to the claimant.  While Dr. DeMuth's observations speak for themselves, it is noteworthy that he never described any of the claimant's limitations or difficulties as "severe" until he gave his summary opinion.  Indeed, crediting Dr. DeMuth's own observations, the claimant presented as essentially normal in several aspects of his behavior and demeanor, and also gave correct or appropriate responses to some of the problems posed in the "sensorium." Tr. 183-84.

[7] The Eleventh Circuit has recognized that the obligation to discuss probative medical opinion evidence is not satisfied where, as here, the ALJ simply mentions the physician's report in some capacity but fails to address the physician's ultimate opinion. *Luckey v. Astrue*, 2009 WL 1362988 at *6 (11th Cir. 2009).

Fed.2d 731, 735 (11th Cir. 1981). However, in certain circumstances, the ALJ's failure to strictly comply with this requirement may be deemed harmless error. *Caldwell v. Barnhart*, 261 Fed. App'x 188, 190 (11th Cir. 2008) ("An ALJ's failure to state with particularity the weight given different medical opinions is reversible error. When, however, an incorrect application of the regulations results in harmless error because the correct application would not contradict the ALJ's ultimate findings, the ALJ's decision will stand.") (citations omitted). Courts have generally found that an ALJ's failure to state what weight is accorded a particular piece of medical opinion evidence is harmless when the ALJ has relied upon other opinion evidence which is consistent with the omitted evidence or the omitted opinion is consistent with the ALJ's ultimate findings. *See, e.g.*, *id.* at 191; *Wright v. Barnhart*, 153 Fed. App'x 678, 684 (11th Cir. 2005). Other courts have recognized that the ALJ's failure to specify the weight given particular medical evidence might be considered harmless when "the Commissioner has met the goal of [20 C.F.R.] § [404.]1527(d)(2) - the provision of the procedural safeguard of reasons - even though she has not complied with the terms of the regulation." *Nelson v. Comm'r of Soc. Sec.*, 195 Fed. App'x 462, 470 (6th Cir. 2006). Under this rationale, the ALJ achieves the goal established by the regulations, without formal compliance, by providing sufficient reasons for the rejection of the omitted opinion by indirectly attacking its "supportability" or "consistency" with the record as a whole. *Id.*

Under circumstances similar to those inhering in this case, the Eleventh Circuit appears to have recognized that such "implicit" rejection of medical opinion evidence is

8

viable provided that the ALJ articulates the reasons for affording the omitted opinion less weight and such reasons are supported by the record. *Snyder v. Comm.'r of Soc. Sec.*, 2009 WL 1492653 at *4 (11th Cir. 2009) ("Here, the ALJ did not specify expressly the weight given to Dr. Oliverio's opinion.  The most the ALJ said is that he was giving greater weight to Dr. Bhatia's opinion.  If that implicitly meant that he gave less weight to Dr. Oliverio's opinion, then the ALJ failed to articulate clearly the reasons for giving less weight to his opinion.  This problem alone requires reversal.").  In this instance, given Dr. Rankart's statement that Dr. DeMuth's opinion is not supported by all of the medical evidence, it appears the omitted medical evidence is inconsistent with the relied-upon medical opinion evidence and, hence, the ALJ's ultimate findings.  Thus, this Court must determine whether, despite failing to specify what weight he afforded Dr. DeMuth's opinion and the reasons therefor, the ALJ nevertheless provided clear and adequate reasons for his apparent decision to afford less weight to such opinion.

The Court concludes that the ALJ did adequately state the reasons supporting his implicit decision to afford Dr. DeMuth's opinion less weight and that those reasons are supported by substantial evidence. It should first be noted that Dr. DeMuth's opinion, though instructive, is not specifically tailored toward resolving the inquiry before the ALJ, *i.e.*, the severity of the claimant's limitations in the discrete domains of functioning identified in the regulations. Thus, Dr. DeMuth's opinion that the claimant is "severely impaired in his ability to function in an age appropriate manner cognitively, communicatively, socially, adaptively,

behaviorally, and in concentration, persistence, and pace" is of questionable relevance due to its generality and strained compatibility with the mandated test. On the other hand, Dr. Rankart's Childhood Disability Evaluation Form specifically addresses each of the domains of functioning and provides a detailed overview of the then-available evidence before concluding that Dr. DeMuth's opinion is not wholly supported by the evidence.[8] More importantly, the ALJ cites to substantial evidence in the record supporting his finding that, while the claimant suffers severe impairments, such impairments do not functionally equal the listings. In particular, the ALJ cites to the following: objective intellectual functioning testing administered in 2007 which indicates "average" noverbal ability functioning (Tr. 222)[9]; a January, 2005, intake evaluation by Montgomery Area Mental Health Authority which, as reported by Plaintiff, indicates that claimant makes As and Bs in school, has essentially normal mental status and average intelligence, and that the claimant has a GAF

---

[8] For example, Dr. Rankart's report makes note of the SSA Function Reports which indicate, *inter alia*, that the claimant has unlimited communication skills (Tr. 69), that he can make friends and has friends his own age and generally gets along with adults and school teachers (Tr. 71). Tr. 191. While these reports also reinforce some of the claimant's limitations regarding concentration and intellectual functioning, it is apparent that, in other aspects, they conflict with Dr. DeMuth's opinion about the claimant's purported limitations in some areas of functioning.

[9] As part of an earlier-administered "behavioral evaluation," the claimant's "cognitive ability" was tested. Tr. 231. In this testing, the claimant scored in the "Extremely Low range" in "reasoning abilities on verbal tasks," "while his nonverbal reasoning abilities are significantly higher and in the Low Average range." Tr. 231. The prevailing impression from this round of testing is that the claimant's performance does not correspond with his overall abilities (Tr. 232-35), and that addressing the claimant's "attention and behavioral needs" may ameliorate some of the claimant's demonstrated limitations in learning and intellectual functioning. Tr. 232.

of 61, denoting "moderate" symptoms or limitations (Tr. 174-75, 178); a 2000 evaluation which concluded that the claimant's overall functioning is in the "Mid to Uppermost Range of Borderline Intellectual Functioning with adaptive capabilities being higher than cognitive/academic capabilities" (Tr. 170); and various reports from the claimant's teachers who present, at best, a mixed picture of the claimant's limitations in the given domains (Tr. 124-165).[10] In sum, there is substantial evidence in the record relied upon by the ALJ in his implicit rejection of Dr. DeMuth's opinion. This circumstance, combined with the questionable probative value of Dr. DeMuth's opinion, renders any failure by the ALJ to specifically discount Dr. DeMuth's opinion harmless.

### VII.   CONCLUSION

The Court has carefully and independently reviewed the record and concludes the decision of the Commissioner is AFFIRMED.

A separate judgment will issue.

---

[10]   The record before the ALJ contains numerous teacher evaluations of the claimant's functional capacities in the given domains. Tr. 125-165. In their earnest assessments of the claimant's functioning in the given domains, the teachers present differing views on the claimant's limitations. For example, some teachers view the claimant's difficulties in aspects of acquiring and using information as "serious" or "very serious," while others consider them less serious. In sum, the evaluations reinforce what is apparent from a global view of the evidence - the claimant suffers from limitations due to the severe impairments found by the ALJ, but substantial evidence supports the ALJ's conclusion that the claimant's limitations are not functionally equivalent to the listings.

DONE this 30th day of September, 2009.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE